Edwabd F. Cbawfobd, J.
The plaintiff, a motorcycle dealer selling and servicing motorcycles, brings this action under section 198 of the General Business Law seeking to enjoin the defendant, a distributor of Kawasaki motorcycles and parts, from terminating an agreement between the parties relative to the purchase and sale of Kawasaki motorcycles, parts and accessories for sale at the plaintiff’s place of business at Whitesboro, New York. The defendant contends that the termination of the agreement was for cause and pursuant to contract and counterclaimed for the value of parts and equipment sold the *830 plaintiff but for which no payment was made. The matter was tried before the court without a jury.
The evidence indicates that the parties first commenced doing business with one another in 1967. By letter dated November 21, 1972 and signed by the defendant’s eastern regional manager, the defendant advised the plaintiff that the sales and service agreement dated March 15, 1972 “ shall terminate on December 21, 1972 ”. Demand was also made therein for the balance of $1,600.36 allegedly due the defendant from the plaintiff as of November 21, 1972 and reference was made to paragraphs 6, 7 and 9 of the agreement, paragraph 9 having been identified in the letter as the paragraph governing ‘ ‘ procedure on termination ”. The plaintiff attached to its complaint and introduced into evidence a signed but undated printed “ Kawasaki Motorcycle Authorized Dealer Sales and Service Agreement ” which by its terms provided that it would expire on September 30,1972 unless sooner terminated. Neither party introduced into evidence the contract referred to as having been dated March 15, 1972 but the testimony would appear to indicate that such a contract was executed and contained terms the same as-or similar to those set forth in the above-referenced contract received as the plaintiff’s Exhibit 1. Paragraph 9 of said agreement entitled “ Early Termination of Agreement ” contained a detailed termination clause which included 7 specific reasons for termination including the following language: ‘ ‘ Either party may terminate this agreement prior to the expiration date provided in Paragraph 3 above, with or without cause, on a minimum of thirty (30) days’ written notice from one party to the other, distributor may immediately terminate this agreement in the event of any of the following: * * * (5) the breach by dealer of any of the provisions of this agreement, including a failure to conduct his business in accordance with any requirements set forth in this agreement, including such Dealer Standards as may be established by the distributor; (6) failure to maintain dealer’s account on a current basis in accordance with distributor’s terms and conditions of sale Paragraph 6 of the sales and service agreement received as the plaintiff’s Exhibit 1 was entitled dealer’s responsibilities and provided the following: “ dealer agrees to vigorously and aggressively promote the sale of motorcycles, parts and accessories sold by distributor through compliance with such dealer Standards as distributor, in its sole discretion, may from time to time establish. Dealer Standards shall include, but not be limited to, the areas of: * * * (13) financial responsibility.”
*831 Prior to sending the letter dated November 21, 1972, which was claimed by the plaintiff not to have been received until December 2, 1972, the defendant wrote a series of letters to the plaintiff regarding amounts due for parts and supplies. Since the motorcycles themselves, approximately 40 of which were sold by the plaintiff during 1972, were floorplanned by a bank, the only open accounts between the parties were for parts and supplies. By letter dated February 15, 1972 the defendant advised the plaintiff that all parts accounts were due on receipt of the monthly statement and that the plaintiff’s parts account was overdue from December, 1971 in the amount of $220.58 and that if payment was not received in ten days open account billing on parts would be terminated and the plaintiff put on a C.O.D. basis with a $50 assessment to be added to each shipment to apply against the open account balance. By letter dated September 14, 1972 and entitled “ First and Final Notice ”, the defendant again reminded the plaintiff that all parts accounts were due on receipt of the monthly statement, that the July invoices were past due in the amount of $531.83 and that if payment were not made the defendant would “ discontinue the shipment of all parts and motorcycles ” until the entire account was paid and that all future orders would be shipped C.O.D. only. By letter dated October 4, 1972 the defendant advised the plaintiff that all parts and motorcycle orders were being held until the parts account balance of $2,311.95 was received and that all future parts would be shipped on a C.O.D. basis until financial confidence was restored. By letter dated October 18, 1972 from the manager of the defendant’s eastern region, the plaintiff was advised that it was essential that all accounts with the defendant be brought to a current status within 30 days to comply with paragraph 6 of the “ Authorized Dealer Sales and Service Agreement ”. The plaintiff failed to bring the parts account to a current status, the closing balances for the final day of the months of September, October, November and December 1972 having been $2,324.36, $1,886.30, $1,298.43 and $871.96 respectively. The evidence showed that the total parts and supplies sold and billed the plaintiff by the defendant for the calendar year 1972 amounted to $6,432.86. The proof indicated that as of November 21, 1972, the date of the termination letter sent by the defendant, the plaintiff owed a substantial percentage of the total amount billed for parts and supplies over the entire year, to wit, 28%.
There is no showing that the defendant terminated the subject contract for ulterior motives. It did not guarantee the plain *832 tiff any exclusive area for sales at any time and no new area dealer was found until January, 1973. It likewise does not appear that the public was disserved by the defendant’s actions. The warranty given by the defendant on its motorcycles permits any authorized dealer to provide the repair and replacement work and an authorized dealer was found to serve the area within a short time after termination.
Motorcycles are motor vehicles within the meaning of section 125 of the Vehicle and Traffic Law. Assuming that motorcycle dealers are entitled to protection by sections 197, 197-a and 198 of the G-eneral Business Law, this court, nevertheless must deny the plaintiff’s demand for an injunction, first, because of the written termination clauses in the contract governing the relationship between the parties, and secondly, because of the fact that the court finds no lack of cause or lack of good faith on the part of the defendant.
It would appear that by the very language of the contract signed by both parties, either had the right to terminate the contract on 30 days’ written notice to the other with or without cause. It would further appear that the defendant’s termination letter of November 21, 1972 substantially complied with the 30-day notice requirement. It also appears that there was ample notice given the plaintiff of the terms and conditions of sale maintained by the defendant and that the defendant gave the plaintiff ample notice of its arrearage and opportunity to make up the same before termination of the contract and that, therefore, according to the terms of the contract, there accrued a right to immediate termination by the defendant. While it is the law of this State that a breach of contract must be material to give cause for rescission (Clarke Contr. Co. v. City of New York, 229 N. Y. 413), it is also the law of this State that where the parties have agreed to a termination clause, it must be enforced as written, (Noah v. Daitch & Co., 22 Misc 2d 649; A. S. Rampell, Inc. v. Hyster Co., 3 N Y 2d 369.) The court finds nothing arbitrary or capricious in the defendant’s actions such as to exclude them from the, definition of cause as gleaned from other cases (Matter of Smith v. Cole, 270 App. Div. 675; Parsil v. Emery, 242 App. Div. 653) and does not find a 30-day notice provision to be contrary to public policy under the facts and circumstances herein disclosed. (Swartz v. War Mem. Comm. of City of Rochester, 25 A D 2d 90; Noah v. Daitch & Co., supra.) Where, as here, approximately 28% of the plaintiff’s annual purchases were in arrears and due and owing the defendant at the time of termination and where the contract *833 and notices mailed the plaintiff by the defendant all referred to the credit requirements maintained by the defendant, and where the contract provisions concerning termination were substantially followed, the court finds no lack of cause or lack of good faith, as those terms are used in sections 197 and 197-a of the General Business Law, in the defendant’s action in terminating the agreement. Accordingly, the plaintiff’s demand for an injunction must be denied.
As to the defendant’s counterclaim, the proof showed that by the time of trial the plaintiff had admirably reduced its indebtedness to the defendant to the sum of $28.12 which the court finds due and owing the defendant by the plaintiff and for which the defendant is entitled to judgment, together with statutory costs and disbursements.